UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
Case No. 3:20-cv-00375-CRS

| | |
|---|---|
| MICHAEL COLLINS, *et al.* : | **MEMORANDUM IN SUPPORT OF ALBERT BENJAMIN CHANDLER, III MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. : | |
| MICHAEL ADAMS, *et al.* : | |

Comes the Defendant, Albert Benjamin Chandler, III, sued in his official capacity as Chairman of the Kentucky State Board of Elections (the "Chair"), and submits the following Memorandum in Support of his Motion to Dismiss Plaintiffs' complaint [DN 1] pursuant to Rule 12(b)(1) and (6).

Plaintiffs' complaint should be dismissed because (1) the Court lacks subject matter jurisdiction over this action as Plaintiffs can demonstrate neither that they have standing nor that this case is ripe for judicial review, and (2) they do not state a valid claim upon which relief can be granted because of deficiencies in their pleadings and also because they have brought their claim solely against the Chair who is only one vote on the bi-partisan State Board of Elections and who cannot unilaterally act for the board.

This motion is not to discount the Plaintiffs' concerns, nor is the Chair suggesting that a miracle will occur and the pandemic will vanish. However, there are many flaws with Plaintiffs' claims, and there are many epidemiologic lessons to be learned in the near future as well as lessons to learn from Kentucky's 2020 primary which has not yet been conducted. Plaintiffs' requests may be valid and can certainly be the topic of later discussion with state officials, but "[t]he federal courts should not quickly 'become entangled, as overseers and micromanagers in the minutiae of state election processes.'" *Ohio Dem. Party v. Husted*, 834 F.2d 620, 622 (6th Cir. 2016). Plaintiffs' claims are not properly before this Court and should be dismissed.

## BACKGROUND

This Court is very familiar with the measures Kentucky employed to help voters safely cast their ballots in the 2020 primary election through the recent case of *Nemes et al. v. Bensinger*, *et al.*, 20-cv-407-CRS The Court's factual summary in *Nemes* is incorporated herein by reference. 20-cv-407-CRS [DN 49] Plaintiffs' claims seek to force Kentucky to extend these measures to November's election, with additional demands.

Specifically, Plaintiffs' requested relief is for the Court to:

1. Prohibit the Chair from using the existing statutory requirements for seeking an absentee ballot. Page ID # 92;

2. Order the Chair to apply the same precautions to the November 2020 election that were enacted to conduct the June 23, 2020 primary, with the additional demand that the Chair make a reasonable effort to contact voters whose ballots were rejected because their signatures did not match with what is on file, and then give the voter the opportunity in an unspecified period of time to "cure the discrepancy" of the signatures. Page ID # 92-93;

3. Prohibit the Chair from enforcing S.B. 2, Kentucky's newly enacted voter photo-identification law (referred to herein as the "Voter ID law")[1]. Page ID # 93; and

4. Order the Chair to remove any reference of the Voter ID law from "election materials." Page ID # 93.

At its core, Plaintiffs' complaint alleges that if the COVID-19 pandemic continues, the existing statutes (including the Voter ID law) will serve to disenfranchise voters in the 2020

---

[1] S.B. 2 is scheduled to go into effect July 1, 2020.

general election in November. To address that, Plaintiffs demand emergency regulations akin to those at issue in *Nemes* be extended to the general election.

Due to the changing nature of the pandemic, state election officials cannot account in June for what measures will be needed in November. However, the first premise of any election procedure is to ensure the protection of Kentucky's voters in an election, and public safety is what prompted a bi-partisan effort of state officials to enact emergency regulations for the primary election.

## LEGAL STANDARD

Plaintiffs seek to impose a mandatory injunction directing state officials to take a course of action, rather than maintaining the status quo, but mandatory injunctions are understandably disfavored. *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 236 (4th Cir. 2014). Colloquially speaking, the Chair's response to Plaintiffs' demands is, let's get through the 2020 primary, learn what lessons we can, continue to monitor public health developments and then decide how to approach the 2020 regular election. Plaintiffs have apparently rejected this course.

In addition to the pragmatic problems of the Plaintiffs' complaint, it lacks the ability to invoke this Court's subject matter jurisdiction. "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg. Auth.,* 895 F.2d 266, 269 (6th Cir.1990) (citing *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir.1986)). "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may attack the complaint on its face or may go beyond the complaint and challenge the factual existence of subject matter jurisdiction." *Conner v. U.S. Dept. of the Army*, 6 F. Supp. 3d 717, 721 (W.D. Ky. 2014).

Also, under Rule 12(b)(6), this Court must dismiss a complaint unless well-plead facts or reasonable inferences from those well-pleaded facts provide grounds for relief. *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 704 (W.D. Ky. 2013). In assessing these questions, "[i]t is not . . . proper to assume that [the plaintiff] can prove facts that [he or she] has not alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (second alteration in original) (internal quotation marks and citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this Court must assume the veracity of well-pleaded factual allegations, it is not required to accept legal conclusions when they are "couched as [] factual allegation[s]." *Id*. at 678-79. At the motion to dismiss stage, in addition to the complaint, this Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

## ARGUMENT

**I. PLAINTIFFS FAIL TO DEMONSTRATE THEIR CLAIMS ARE FIT FOR JUDICIAL REVIEW BECAUSE THEY DO NOT HAVE STANDING AND BECAUSE ISSUES RELATING TO THE NOVEMBER ELECTION ARE NOT YET RIPE.**

**A. Plaintiffs do not have standing to assert their claims because they have not suffered an injury-in-fact.**

The doctrine of standing arises out of the requirement in Article III of the United States Constitution that federal courts may only address a case or controversy. As such, it is jurisdictional and must be addressed as a threshold matter. *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017). "Standing requires Plaintiffs to show 1) they have suffered an injury-in-fact that was 2) caused by Defendants' conduct and that 3) this Court can likely redress the injury with a decision for the

Plaintiffs." *Id.* at 315-16. The present Plaintiffs bear the burden of proving the three elements of standing as they are the ones who are attempting to avail themselves of this Court's authority. *Shearson v. Holder*, 725 F.3d 588, 592 (6th Cir. 2013). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

In order to satisfy the injury-in-fact requirement, a plaintiff must allege that they "have suffered an injury-in-fact, which is 'concrete, particularized, and actual or imminent.'" *Shearson*, 725 F.3d at 592 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). In order to demonstrate that the threat of future harm satisfies the injury-in-fact requirement, the facts must demonstrate that there is a "substantial risk" that the constitutional harm will occur. *Clapper*, 568 U.S. at 414. With regard to such alleged future injuries, the Supreme Court has made clear that "allegations of possible future injury are not sufficient." *Id.* at 409. The Supreme Court also noted that, "A highly attenuated chain of possibilities [ ] does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 410.

Plaintiffs argue their fundamental right to vote will be substantially burdened in the November general election without substantial changes to Kentucky's absentee ballot and abolishment of the Voter ID law in light of the COVID-19 pandemic. [DN 1, Page ID# 6-10]. Plaintiffs' argument is that the two voting laws they are challenging are not *per se* unconstitutional on their own, only that there is a possibility they will become so in five months. [*Id.*, Page ID# 84, 88]. In essence, the Plaintiffs say these laws might be unconstitutionally applied in the future. The basis for this argument is conjectural given the changing and evolving nature of the pandemic.

As Plaintiffs point out in their complaint, "the curve is beginning to flatten" but "'going in the right direction . . . does not mean we have, by any means, total control over this outbreak[]'. .

5

. .” [*Id.* at Page ID# 3]. Plaintiffs are asking the Court to invalidate the current absentee ballot and Voter ID Law due to events that may or may not take place in five months. But "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. The entirety of Plaintiffs' constitutional claims hinge on whether the pandemic maintains the same or similar character that it has today, but this is by no means "'concrete, particularized, and actual or imminent.'" *Shearson*, 725 F.3d at 592.

Finally, notwithstanding forecasting the pandemic's growth or diminution over time, Plaintiffs, as well as every other eligible Kentucky voter, can still cast a ballot in the November election under the current laws. There is no abridgement of the right to vote, and as such, no injury-in-fact.

### B. The issues are not yet ripe for judicial review.

Not only is the future harm with which Plaintiffs are concerned speculative, but the fact that no injury has yet happened indicates that the voting issues described in their complaint are not yet ripe for adjudication. The basic rationale for the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbot Laboratories v. Gardner*, 287 U.S. 136, 148-49 (1967). In order to determine whether an issue is ripe for review, courts evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *National Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003) citing *Abbot Laboratories*, *supra*.

First, the "fitness" of an issue is not ordinarily considered ripe for judicial review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *National Park Hospitality Ass'n*, 538 U.S. at 808. In this case, regarding the November 2020 election, no action has yet been taken on the part of the state government. Indeed, when considering the actions taken toward the 2020 primary, the SBE and other state officials were and are still acutely aware of the potential dangers of in-person voting during a pandemic, and stand ready to take the same or similar steps to ensure voters have safe access to polling locations early and no-fault absentee ballot procedures.

However, this Court should not be asked to divine the future to redress a potential constitutional crisis. The procedures implemented through the emergency regulation (31 KAR 4:190E) were narrowly tailored to match the state's needs when it was promulgated and there is every reason to think that will occur again if needed.

There is no hardship on the parties to wait and see not only how the pandemic develops over the coming months, but how the state responds. Plaintiffs should realize the state is fully prepared to take necessary steps in order to ensure the public is safe and the public's constitutional right to vote in the 2020 general election is ensured by reasonable means.

It is clear that without more facts available as to what the future holds regarding the pandemic and without the state first creating a potential solution to combat any number of those outcomes, the Court cannot be expected to provide Plaintiffs with a satisfactory solution.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FIRST AND FOURTEENTH AMENDMENTS.

Generally, in a First and Fourteenth Amendment challenge to state voting laws, "[t]he level of scrutiny applied to a state election regulation depends on the burden imposed by the regulation

on the constitutional rights of voters and candidates." *Jolivette v. Husted*, 694 F.3d 760, 767 (6th Cir. 2012) citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). "Strict scrutiny is the standard for cases where 'the State totally denied the electoral franchise to a particular class of residents, and there was no way in which the members of that class could have made themselves eligible to vote.'" *Mays v. LaRose*, 951 F.3d 775, 786 (6th Cir. 2020). However, courts apply a lesser standard of review using the *Anderson-Burdick* analysis, which states, "[w]hen States impose reasonable nondiscriminatory restrictions on the right to vote, courts apply rational basis review and the State's important regulatory interests are generally sufficient to justify the restrictions." *Mays*, 951 F.3d at 784 (internal quotation marks omitted) citing *Burdick v. Takushi*, 504 U.S. 428 (1992) and *Anderson v. Celebrezze*, 460 U.S. 780 (1983).

### A. Plaintiffs' challenge to Kentucky's Voter ID Law fails because Plaintiff cannot show discriminatory intent.

"[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact…Proof of <u>racially discriminatory intent or purpose</u> is required to show a violation," although that purpose need only be "a motivating factor in the decision." *Lee v. Virginia State Board of Elections*, 843 F.3d 592, 603 (4th Cir. 2016) (emphasis preserved), *see also Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 636 (6th Cir. 2016) (adopting the same standard). In *Lee*, the court was asked to rule on the constitutionality of Virginia's voter ID law, which the plaintiffs alleged unduly burdened their right to vote and imposed "discriminatory burdens on African Americans and Latinos, and was enacted with the intent to discriminate against minorities, young voters, and Democrats." *Id.* at 594. The court, however, found no discriminatory intent in the law, even though there was a substantial party split in enacting the legislation. *Id.* at 603. This is because the statute allowed a broad scope of acceptable identification. *Id.*

Here, Plaintiffs have also presented no such proof of discriminatory intent. As in *Lee*, Kentucky voters – under non-pandemic conditions – who do not have proof of identification will still vote if that person is eligible, entitled to vote in that precinct, and executes an oath of voter form. S.B. 2 § 1(1)(c).

The Voter ID Law is similar to other laws found throughout the country, as seen in *Greater Birmingham Ministries v. Merrill*, 284 F. Supp. 3d 1253 (N.D. Ala. 2018). There, the court found no discrimination on the basis of race in relation to a voter identification law because nearly the entire voting population already had an acceptable identification. *Id.* at 1274. Moreover, the law did not prevent anyone from voting because they could obtain a voter identification in every county free of charge without showing a birth certificate and by signing a voter registration form, under oath, in front of an election official. *Id.* at 1279.

While voter identification laws do impose some burden on the right to vote, they do not function as a complete bar to reaching the polls. *See, Mays*, 951 F.3d at 786 (on the criteria for applying strict scrutiny to voting laws under the First and Fourteenth Amendments). Thus, the lesser intermediate standard in *Anderson-Burdick* applies in this case. In *Crawford v. Marion County Election Bd.*, 553 U.S. 181 (2008), the Court upheld an Indiana voter identification law on the basis that the record failed to show the law imposed "'excessively burdensome requirements' on any class of voters." *Id.* at 202. Instead, the voter identification law applied to all Indiana voters and was shown to fulfill the important government interest of deterring and detecting voter fraud, participating in a nationwide effort to improve and modernize election procedures, and safeguarding voter confidence. *Id.* at 202-03.

The same holds true here. The Voter ID Law applies to all Kentucky voters, regardless of race, and Plaintiffs have only presented bare assertions that the law will function to disadvantage

9

one class of individual over another. Moreover, the new law functions to protect the important government interest of deterring voter fraud.

In light of the foregoing case law and analysis, Plaintiffs have failed in their burden of showing S.B. 2 is a violation of Kentucky voters' First and Fourteenth Amendment Rights.

> **B. Plaintiffs' assertion that they will have no means of voting in the 2020 general election without an immediate revision to the Kentucky absentee ballot statute is unfounded and speculative.**

Plaintiffs argue that they will be disenfranchised from voting in the 2020 general election, without the same no-fault absentee ballot allowed in the 2020 primary. Without resorting to a complete reiteration of the arguments above, neither the Plaintiffs, nor the Court, nor the state officials named in this action know how the pandemic will progress by the time of the general election in November. The emergency voting procedures enacted under 31 KAR 4:190E were narrowly tailored to match the current, rapidly deteriorating state of the pandemic. The Plaintiffs' request that this Court dictate to Kentucky about how it should conduct its elections and without any input from state officials in Kentucky.

The Plaintiffs and every eligible resident of Kentucky have the right to vote in person in the 2020 general election in November, and it is well-settled that "there is no constitutional right to an absentee ballot." *Mays*, 951 F.3d at 792. The Sixth Circuit has found absentee ballot laws, similar to what is prescribed in Kentucky's statutes,[2] did not show discriminatory intent and, thus, did not contain constitutional violations. *See Husted*, 837 F.3d at 619, 636-37 (in which the court found that the Ohio General Assembly did not act with "racial animus" in enacting an Ohio law for absentee ballots requiring applicants to provide a name, signature, address, date of birth, and a form of identification in the application in order to receive an absentee ballot).

---

[2] KRS 117.077 and 117.085.

10

Thus, without knowing the progression and spread of COVID-19, which may indeed necessitate a reevaluation of absentee voting in the November general election, the absentee ballot statute is constitutional.

### III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE CHAIR

In an attempt to enjoin the SBE from implementing S.B. 2 and following KRS 117.077 and 117.085 in the November 2020 general election, Plaintiffs named Albert Benjamin Chandler, III in his official capacity as a Chairman of the Kentucky State Board of Elections. [DN 1, Page ID# 27] Plaintiffs did not name any of the remaining eight members that make up the Board of Elections, nor did it name the board. Plaintiffs' claim against the Chair cannot survive because even if the Court did grant an injunction against the Chair, he alone cannot provide Plaintiffs with the relief requested because the Chair is but one vote of nine on the State Board of Elections. If the Court were to mandatorily enjoin the Chair and direct him not to comply with the provisions of the Voter ID Law, and KRS 117.077 and 117.085, he could still be out voted by his colleagues.

Accordingly, the claims against the Chair should be dismissed because he, alone, cannot accord Plaintiffs the relief they are requesting.

### IV. COMPLAINT PRESENTS A NON-JUSTICIABLE POLITICAL QUESTION

A case should be dismissed because it presents a non-justiciable political question if the Court reviewing the action lacks "judicially discoverable and manageable standards for resolving [the issues in the complaint]." *Rucho v. Common Cause*, ___ U.S. ___, 139 S.Ct. 2484, 2493 (2019). This complaint tells the Court to dictate to Kentucky how it is to conduct its election in November 2020, not on the basis of what is occurring now, but what the Plaintiffs predict will occur in the future. The Plaintiffs' efforts in this regard fail to provide the Court with judicially discoverable and manageable standards for resolving the complaint in that it demands the Court to

not only abridge the Election Clause of the Constitution[3] but the Plaintiffs attempt to tell the Court to do this based entirely upon guesswork – those are not discoverable or manageable standards. The general premise is that a "State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 231, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). In furtherance of this principle, the federal judiciary defers to the state's rights under the Election Clause to "enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *see also Storer v. Brown,* 415 U.S. 724, 730 (1974).

The Chair requests the Court adhere to this maxim and let the state and local officials exercise their knowledge and experience to develop a process for the 2020 general election, rather than substituting a plan of its design, dictating how Kentucky should operate this election. Case 3:20-cv-00407-CRS Document 49 Filed 06/18/20 Page 15 of 33 Page ID #: 790

## CONCLUSION

The foregoing analysis shows Plaintiffs have not met their burden in this case and the action should be dismissed.

Respectfully submitted,

Taylor Austin Brown
General Counsel
State Board of Elections
140 Walnut Street Frankfort, Kentucky 40601
(502) 782-9499
TaylorA.Brown@ky.gov

Daniel Luke Morgan
McBrayer PLLC
201 E. Main St., Suite 900
Lexington, KY 40507
859-231-8780
Lmorgan@mcbrayerfirm.com

By: */s/Daniel Luke Morgan*
Daniel Luke Morgan
ATTORNEYS FOR ALBERT BENJAMIN CHANDLER, III

---

[3] Article I §2.

12

## CERTIFICATE OF SERVICE

      I certify that a true and accurate copy of this Opposition was served via the Court's CM-ECF system this the 19th day of June, 2020.

4829-4084-8064, v. 2