UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL COLLINS, *et al.*

*Plaintiffs*

v.

MICHAEL ADAMS, in his official capacity as the Secretary of State of Kentucky, *et al.*

*Defendants*

Judge Charles R. Simpson
Civil Action No. 3:20-cv-00375-CRS

**COMMONWEALTH OF KENTUCKY, *EX REL.* ATTORNEY GENERAL DANIEL CAMERON'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

In support of its motion to intervene in this action, the Commonwealth of Kentucky, *ex rel.* Attorney General Daniel Cameron (the "Commonwealth"), states as follows:

This case involves two constitutional challenges to Kentucky election laws. The first challenge involves Ky. Rev. Stat. 117.085 and Ky. Rev. Stat. 117.077, which together provide for absentee voting by mail for voters who satisfy certain criteria established by the General Assembly. [*Cf*. Plaintiffs' complaint ¶¶ 154–155, DN 1.] The second challenge involves Senate Bill 2,[1] which requires voters to present a valid photo identification document when voting in person or applying to vote via absentee

[1] 2020 Ky. Acts ch. 89.

ballot. [*Cf. Id.* ¶ 159, DN 1.] These statutes, which are the public policy of Kentucky, are plainly constitutional, and the Plaintiffs' constitutional challenges represent little more than an attempt to impose the policy preferences of political activists and others on the citizens of the Commonwealth.

As the Commonwealth's chief law officer, Attorney General Cameron has not only the power, but also the duty, to defend these laws on behalf of the Commonwealth and its citizens. *See* Ky. Rev. Stat. 15.020. Under Kentucky law, Attorney General Cameron "shall" enter his appearance "in all cases, hearings, and proceedings . . . in which the Commonwealth has an interest." *Id.* He is, in the words of Kentucky's highest court, the "attorney for the people of the State of Kentucky." *Commw. ex rel. Conway v. Thompson*, 300 S.W.3d 152, 173 (Ky. 2009) (quoting *Commw. ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 618 (Ky. 1992) (Leibson, J., dissenting)). Furthermore, in his capacity as the Attorney General of Kentucky, Attorney General Cameron has jurisdiction to investigate and prosecute violations of Kentucky's election laws, Ky. Rev. Stat. 15.242, and has the duty to "enforce all of the state's election laws by civil or criminal processes," Ky. Rev. Stat. 15.243. Therefore, as the chief attorney for the Commonwealth's citizens, and in order to enforce the Commonwealth's election laws, Attorney General Cameron moves to intervene to defend the challenged statutes.

## ARGUMENT

Under Rule 24, a party is entitled to intervene of right on a timely motion if the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A party may intervene permissively on a timely motion if the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24 also gives government parties, like the Commonwealth acting through its chief law officer, Attorney General Cameron, additional leeway to intervene permissively: On timely motion, a government party may intervene "if a party's claim or defense is based on . . . a statute . . . administered by the officer or agency." Fed. R. Civ. P. 24(b)(2)(A). Attorney General Cameron should be allowed to intervene on behalf of the Commonwealth on all three bases.

## I. The Commonwealth is entitled to intervene of right.

In the Sixth Circuit, a party can intervene of right if:

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest.

*United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). These four factors must be "broadly construed in favor of potential intervenors." *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

Regarding the first factor, the Sixth Circuit weighs five additional factors to determine whether a motion to intervene is timely. They are:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of

> their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (quoting *Jansen v. Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the 'determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" *Id.* (quoting *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472–73 (6th Cir. 2000)).

Under this standard, the Attorney General's motion to intervene on behalf of the Commonwealth is timely. This action is less than a month old, and the Attorney General's motion comes before any discovery or motion practice. *See Blount-Hill*, 636 F.3d at 284 (considering "the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case") (citation omitted). The Sixth Circuit recently characterized the lack of discovery as "a marker that we have previously considered relevant in assessing the timeliness of a motion to intervene." *Kirsch v. Dean*, 733 F. App'x 268, 275 (6th Cir. 2018) (unpublished). All substantive matters remain unresolved. *See Kirsch*, 733 F. App'x at 275 (affirming denial of motion to intervene where the "district court had already partially granted and partially denied [the defendant's] motion to dismiss, denied [the defendant's] motion to disqualify [the plaintiff's] counsel, and resolved several additional non-dispositive motions") (internal citations omitted).

Because this action is so new, Attorney General Cameron's intervention on behalf of the Commonwealth will not meaningfully delay this litigation. Attorney General Cameron seeks to intervene on behalf of the Commonwealth not to raise new claims, but only to defend Kentucky's laws from the specific challenges brought by the Plaintiffs. This will not prejudice the existing parties. *See Blount-Hill*, 636 F.3d at 284 (listing "prejudice to the original parties" as a relevant timeliness factor). The Plaintiffs will suffer no prejudice, nor will intervention prejudice the Secretary of State, the Governor, or the State Board of Elections. So the motion to intervene is timely.

As to the second factor governing intervention of right—whether the Commonwealth through Attorney General Cameron has a sufficient legal interest in this matter—there can be no doubt. The Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention of right," *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and has determined that the term "'interest' is to be construed liberally," *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). As a matter of state law, Attorney General Cameron is the Commonwealth's "chief law officer." Ky. Rev. Stat. 15.020. He must "enter his appearance in all cases, hearings, and proceedings . . . and attend to all litigation and legal business in or out of the state required of him by law, or in which the Commonwealth has an interest." *Id.* As the Supreme Court of Kentucky has recognized, it is a "bedrock principle[]" that the Attorney General possesses "broad powers to initiate and defend actions on behalf of the people of the Commonwealth."

*Thompson*, 300 S.W.3d at173 (emphasis added). In the field of election law, the Kentucky Attorney General plays an especially important enforcement role. *See* Ky. Rev. Stat. 15.242; Ky. Rev. Stat. 15.243. On the topic of intervention into litigation by the Attorney General, Kentucky's highest court long ago held:

> The Attorney General, as chief law officer of this Commonwealth, charged with the duty of protecting the interest of all the people . . . had such a vital interest in this litigation that he had a right to intervene at least insofar as the public issues advanced in the action were involved.

*Hancock v. Terry Elkhorn Mining Co.*, 503 S.W.2d 710, 715 (Ky. 1973). Even the Federal Rules of Civil Procedure recognize that a state's attorney general is the most appropriate party to defend the constitutionality of the state's laws. *See* Rule 5.1(c).

This case falls within the core of Attorney General Cameron's duties as the Commonwealth's chief law officer for the people of Kentucky. The Plaintiffs challenge the constitutionality of Kentucky's election statutes, requesting that this Court enjoin their enforcement. [*See* Complaint, DN 1 (requesting preliminary and permanent injunction).] The Commonwealth's interest in defending these laws and ensuring that they are enforced is paramount. This interest is an integral part of the Commonwealth's sovereignty in our system of federalism. Importantly, the Sixth Circuit has squarely held that a state, through its Attorney General, has a "*manifest legal interest* in defending the constitutionality of [its] laws." *Blackwell*, 467 F.3d at 1007 (emphasis added); *see also Gillie v. Law Office of Eric A. Jones, LLC*, 2013 WL 4499955, at *4 (S.D. Ohio Aug. 21, 2013) (finding this factor satisfied as to state attorney general).

This leads to the third factor governing intervention of right—whether the intervenor's ability to protect its interest may be impaired without intervention. "[T]he requirement of impairment of a legally protected interest is a minimal one: the requirement is met if the applicant shows 'that representation of his interest may be inadequate.'" *Blackwell*, 467 F.3d at 1007 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)) (internal quotation marks omitted).

It should go without saying that, if Kentucky's election laws are permanently enjoined, Attorney General Cameron's interest as the Commonwealth's chief law officer, having the duty to "enforce all of the state's election laws," and the Commonwealth's interest in enforcing its laws will be substantially impaired. As the Sixth Circuit reasoned in allowing Ohio's Attorney General to intervene of right to defend an Ohio law before both the district court and on appeal, "an adverse ruling could hinder the State's ability to litigate the validity of the Ohio law." *Blackwell*, 467 F.3d at 1007–08 (citing *Linton v. Commissioner of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir. 1992) ("potential *stare decisis* effects can be a sufficient basis for finding an impairment of interest")); *Gillie*, 2013 WL 4499955, at *4 (similar). In sum, the Commonwealth has a meaningful interest in having its chief law officer defend its laws.

The Commonwealth, through Attorney General Cameron, also satisfies the fourth element for intervention of right. "The State's burden with respect to establishing that its interest is not adequately protected by the existing party to the action is a minimal one; it is sufficient to prove that representation may be

inadequate." *Blackwell*, 467 F.3d at 1008. The fact that an intervenor seeks the same outcome as a current party does not foreclose intervention of right. *See id.* Indeed, the Sixth Circuit has held that "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Miller*, 103 F.3d at 1247.

This low bar is easily met here. Only the Attorney General has statewide authority to enforce the election laws in Kentucky. Though the Secretary of State is Kentucky's "chief election official," Ky. Rev. Stat. 117.015(2)(a), he has no enforcement duties. The State Board of Elections also is not charged with enforcing the election laws, only with implementing them. The Governor certainly has the duty to "take care that the laws be faithfully executed," Ky. Const. § 81, but he vetoed Senate Bill 2, which suggests that he likely would not make the same arguments in favor of the constitutionality of the challenged election statutes as will the Attorney General.[2] In fact, the Governor has publicly stated that he welcomes this lawsuit and supports the Plaintiffs' position.[3] The Governor also is not charged with any particular election law enforcement functions. In short, the Attorney General's enforcement, investigation, and prosecution duties means that he will bring a unique perspective on behalf of the Commonwealth in this litigation. *See Miller*, 103 F.3d at 1247 ("One would expect that the Chamber, as the target of the statutes' regulations,

[2] The Governor vetoed Senate Bill 2 on April 13, 2020. The General Assembly overrode his veto, and Senate Bill 2 became law, the following day.

[3] *See* Lawrence Smith, *Beshear siding with ACLU in lawsuit to overturn Kentucky's Voter ID law*, WDRB (May 27, 2020), available at https://www.wdrb.com/community/beshear-siding-with-aclu-in-lawsuit-to-overturn-kentuckys-voter-id-law/article_eee3814c-a07d-11ea-99e0-1b104761d4a6.html (last visited July 9, 2020).

would harbor an approach and reasoning for upholding the statutes that will differ markedly from those of the state, which is cast by the statutes in the role of regulator.").

For all these reasons, the Commonwealth through Attorney General Cameron should be granted intervention of right.

**II. The Commonwealth should be granted permissive intervention.**

Under Rule 24(b)(2), an intervenor can intervene permissively if the motion to intervene is timely and if the intervenor alleges "at least one common question of law or fact" that is already raised in the pending lawsuit. *Michigan*, 424 F.3d at 445 (discussing Fed. R. Civ. P. 24(b)(1)(B)). If those threshold requirements are met, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id.* (quoting *Miller*, 103 F.3d at 1248).

For the reasons discussed above, this motion is timely and will not prejudice the existing parties or unduly delay the resolution of this matter. The Attorney General's intervention into this case on behalf of the Commonwealth also raises "at least one common question of law or fact" to the issues raised in the Plaintiffs' complaint. *See id.* By way of example only, Attorney General Cameron seeks to defend Ky. Rev. Stat. 117.085 and Ky. Rev. Stat. 117.077 on the basis that those statutes do not impose an unreasonable burden on the Plaintiffs, and that the statutory requirements are within the constitutional power of the Commonwealth as a sovereign state to govern its elections. As to Senate Bill 2, Attorney General Cameron intends, among other things, to defend the law on the ground that the photo

identification requirement is a reasonable regulation intended to preserve the integrity of the Commonwealth's elections and to detect and deter voter fraud.

For all these reasons, the Commonwealth through Attorney General Cameron should be granted permissive intervention.

### III. Intervention should be granted based upon Attorney General Cameron's role as a government party.

Rule 24(b)(2)(A) gives special consideration to government parties who seek permissive intervention into a lawsuit. For a government party, all that the rule requires is (i) a timely motion (ii) into a lawsuit where "a party's claim or defense is based on . . . a statute . . . administered by the officer or agency" (iii) with consideration of whether "the intervention will unduly delay or prejudice the adjudication of the original parties rights." *See id.* Under this rule, "permissive intervention is liberally granted to government officials 'when sought because an aspect of the public interest with which [the officer] is officially concerned is involved in the litigation.'" *Donahoe v. Arpaio*, 2012 WL 2675237, at *3 (D. Ariz. July 6, 2012) (citing *Nuesse v. Camp*, 385 F.2d 694, 706 (D.C. Cir. 1967); *S.E.C. v. U.S. Realty & Improvement Corp.*, 310 U.S. 434 (1940)). District courts across the Sixth Circuit have granted permissive intervention to government officials under Rule 24(b)(2). *See*, *e.g.,* *Smith v. Federal Hous. Fin. Agency*, 2013 WL 12121334, at *2 (E.D. Tenn. Jan. 22, 2013); *Gillie*, 2013 WL 4499955, at *5.

Viewing Kentucky's election laws as a whole, the Attorney General certainly has a hand in administering them. For example, Ky. Rev. Stat. 119.165(1) makes it a felony to impersonate a voter, and then receive and cast a ballot in an election. The

Kentucky General Assembly enacted Senate Bill 2, in part, to strengthen Kentucky's election laws to deter and prevent this kind of voter fraud. *See* Senate Bill 2 preamble ("[I]t is critically important to protect the integrity and reliability of the electoral process in order to *ensure that there is proper detection and deterrence of voter fraud* . . . ." (emphasis added)). As discussed above, the Attorney General is empowered to investigate and prosecute violations of the election laws. *See* Ky. Rev. Stat. 15.242. He also can enforce them. *See, e.g., Thompson*, 300 S.W.3d at 173; Ky. Rev. Stat. 15.243(1). Therefore, Senate Bill 2 provides a valuable "detection and deterrence" tool to better enable the Attorney General to prosecute voter fraud, and thereby administer the Kentucky election laws.

By serving as the Commonwealth's chief prosecutor of voter fraud, the Attorney General plays a unique role in administering Kentucky's election laws, as required by Rule 24(b)(2)(A). *See Gillie*, 2013 WL 4499955, at *5 ("A movant satisfies the requirement that it administers the statute upon which a party's claim or defense is based if the movant 'manages directs, or supervises the application of the statute.'" (citing *McHenry v. C.I.R.*, 677 F.3d 214, 220–21 (4th Cir. 2012)). This is not a situation where the Attorney General merely has a vague interest in seeing that these laws are enforced. As the chief law officer for the people of Kentucky, Attorney General Cameron is empowered to ensure—through investigation, prosecution, injunctive relief, and otherwise—that those statutes are in fact implemented and enforced.

The other requirements for permissive intervention under Rule 24(b)(2)(A) also are met. For the reasons described above, this motion to intervene is timely and will not prejudice the existing parties or unduly delay the resolution of this matter.

**CONCLUSION**

The Court should grant Attorney General Cameron's motion to intervene on behalf of the Commonwealth so that he may defend the constitutionality of Ky. Rev. Stat. 117.085, Ky. Rev. Stat. 117.077, and Senate Bill 2.

Respectfully submitted,

**Daniel Cameron**
**ATTORNEY GENERAL**

/s/ Aaron J. Silletto
Victor B. Maddox
Carmine G. Iaccarino
Aaron J. Silletto
Brett R. Nolan
Marc Manley
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Victor.Maddox@ky.gov
Carmine.Iaccarino@ky.gov
Aaron.Silletto@ky.gov
Brett.Nolan@ky.gov
Marc.Manley@ky.gov

*Counsel for Intervening Defendant, Commonwealth of Kentucky ex rel. Attorney General Daniel Cameron*