UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**MICHAEL COLLINS, et. al.**          :          Case No. 3:20-cv-00375-CRS

v.                                    :

**MICHAEL ADAMS, et. al.**            :

DECLARATION OF JARED DEARING
ON BEHALF OF THE DEFENDANTS

Pursuant to 28 U.S.C. §1746, the undersigned, Jared Dearing, makes the following declaration, on behalf of all of the defendants, under penalty of perjury under the laws of the United States of America, that the facts contained herein are true and correct and based upon my personal knowledge:

1. My name is Jared Dearing.

2. I am currently the Executive Director of the Kentucky State Board of Elections and have served in that role since 2017.

3. I currently serve as Secretary on the Board of Directors for the National Association of State Election Directors.

4. I am currently a member of the United States Election Assistance Commission Standards Board which is the governing board that provides guidelines and standards for various election systems utilized throughout the United States.

1

5. I presently sit on the Board of the Electronic Registration Information Center (E.R.I.C.), a non-profit organization with the sole mission of assisting states to improve the accuracy of America's voter rolls and increase access to voter registration for all eligible citizens.

6. Due to the COVID-19 pandemic, and pursuant to KRS 39A.100(1)(l), Kentucky was forced to delay and then alter the manner of the 2020 primary elections held in this state.

7. In the KRS 39A.100(1)(l) process, a bipartisan effort, which included the State Board of Elections, the office of the Secretary of State, and the office of the Governor, led to emergency administrative regulations that allowed for an expansion of the state's already existing excuse-based absentee voting procedures.

8. These expanded excuse-based absentee procedures allowed for over a million voters to participate in the primaries, resulting in the highest turnout numbers for a primary the state has seen in decades.

9. Of the votes cast, approximately 750,000 of those came through the mail-in absentee process, 100,000 were cast early as in-person absentee votes, and 150,000 were cast on Election Day by voters who appeared in person at the polling locations.

10. While final costs for the 2020 primary have not yet been fully realized, it is believed that the state spent upwards of $7,600,000 administering the election, a number that does not include the costs borne by the individual counties.

10. Well before the COVID-19 pandemic, election administrators across the country were preparing for extremely high turnout for the 2020 general election given that the office of President of the United States would be decided. The COVID-19 pandemic has not led to these

turnout predictions lessening in any sense; in fact, turnout models now predict higher voter participation than was predicted at this time last year.

11. The 2020 Kentucky primary elections were widely seen as successful, thanks in part to the fact that the entire process was implemented in a bipartisan manner with stakeholders from all sides working together to achieve a system that achieved the goals of elections administrators – a fair, secure, and safe election. The other reason Kentucky was able to successfully revise the state's voting processes came from the fact that models forecast that turnout could reasonably be predicted to not exceed 35%. True turnout for the election proved to be just under 30%.

12. County Clerks were able to successfully pivot to the new procedures thanks in part to the fact that the pandemic had largely forced the closure of their offices to the public, allowing staff to shift their efforts solely to the election. Despite this ability to focus on processing an influx of mail-in absentee ballots, Clerks and their staffs, statewide, were still strained to capacity in their receipt of record-breaking numbers of mail-in absentee ballots.

13. While primary turnout models predicted that changing the manner of the primary election could be successful, these models relied on voter turnout staying below a threshold number.

14. The models that were accurate in the primary election, forecast a general election turnout of nearly 70% of voters, translating into a number that could exceed 2.5 million votes – a number that would surpass decades-old historical voter turnout numbers.

15. Extrapolating the voting numbers received in the 2020 primary to the November 2020 turnout provides the following information: 1.875 million votes would be returned as mail-in absentee ballots, 250,000 would come in as in-person absentee votes, and 375,000 would be cast

3

on November 3, 2020. These are the numbers anticipated if the same processes from the primary 2020 election are used in the general 2020 election.

16. Based on these numbers, it is my belief that while strained to capacity during the primary in processing three-quarters of a million mail-in absentee ballots, County Clerks, whose offices are now largely open to the public and charged once again with serving the various needs of their citizenry, will not be able to successfully handle a statewide increase of an additional one-million-plus mail-in ballots. Simply put, given the logically expected turnout, tasking Clerks with processing a vast increase of mail-in absentee ballots from what was already an unprecedented rise, will far exceed most Clerk's capacity to timely process the mail-in ballots cast in the 2020 general election.

17. Regarding the 2020 the general election, while there are still unknowns to be determined, what is known definitively regarding the primary election was that a bipartisan process, involving the State Board of Elections, the Secretary of State, and the Governor, unfolded in accordance with Kentucky statutory law, producing a successful change in the administration of the election in the midst of a pandemic.

18. I have every reason to believe that the defendants in this action will work again in a bipartisan fashion, and in collaboration with County Clerks across Kentucky to develop an election procedure that will safely assist the state's voters in casting their ballots in the 2020 general election.

Pursuant to 28 U.S.C. §1746, I declare under penalties of perjury under the laws of the United States of America that the foregoing Declaration is true and correct to the best of my knowledge and belief and that such facts are made based on my personal knowledge.

Executed on August 14, 2020.

Jared Dearing

GREG DEARING
Notary Public
Special Commission
Kentucky
My Commission Expires 3/30/2024

5